**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATO H. SPARKMAN;<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK NATIONAL ASSOCIATION;<br><br>WELLS FARGO HOME MORTGAGE; and<br><br>WACHOVIA MORTGAGE, FSB<br><br><br>    Defendant | Civil Action No.: _____<br><br>*Civil Action*<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, ATO H. SPARKMAN by and through the undersigned counsel, hereby submit this complaint against Defendants, and in support thereof, states as follows:

## NATURE OF ACTION

This action arises from a transaction dated November 30, 2007 that was signed by the Plaintiff, who was led to believe that said transaction constituted a traditional refinance "mortgage loan" requiring the Plaintiff to pledge their real property as collateral in return for a lender suffering a real loss by loaning money to the Plaintiff from the lender's reserves, in return for the Plaintiff promise to pay 360 monthly installments of principal and interest to the lender, and / or lender's lawful successors and assigns.

What the Plaintiff did not know as of November 30, 2007, he later discovered, and has yet to fully comprehend absent meaningful discovery and subpoenas, is that what was presented to be a traditional refinance mortgage loan was, in reality, an unconscionable – securities transaction

with underlying features prohibited by State, Federal, and the common law tort of usury, and the Plaintiff was unknowingly converted from a mortgagor into a securities issuers upon providing his signature, personal identifying information, and real property. All of which served as the "bloodline" for a multi-trillion dollar derivatives scheme fueled by the Defendants and their non-party affiliates which underlies the Financial Crisis of 2008, and future calamity as the result of a "shadow banking economy" for which the average soul has not a clue.

Hence, for more than ten years the Plaintiff's "American Dream" of home ownership, the right to engage in honest and fair dealings, and the right to maintain possession of his home free and clear from unwarranted seizures[1], has turned into a nightmare upon the persistent and unrelenting unfair – deceptive - unlawful practices by the Defendants and their non-party affiliates who, together, are an enterprise working in concert to steal the Plaintiffs' property and extort monies arising from an unlawful debt collection through the use of forged instruments, misrepresentations, and concealment of truth.  Furthermore, while the Plaintiff does not dispute the fact that money appeared as a result of the transaction referred to in this complaint, the Plaintiff, however, disputes the substance and legality of that transaction, and avers that the egregious, malicious, and willful misconduct by the Defendants and the latter's non-party affiliates, is the proximate cause of the injuries complained of within.

Thus, for the reasons set forth below within the facts common to all counts, the Plaintiff avers that the foreclosure action commenced in the Superior Court of New Jersey, arising from a fraud in factum transaction originated in violation of State, Federal, and the Common Law Tort of Usury, and any / all orders procured by the Defendants, is herein subject to collateral attack.

---

[1] "*Nemo dat quod non habet.*" Citing Mitchell v. Hawley, 83 U.S. 16 Wall. 544 544 (1872).

2

## PARTIES

1.      Plaintiff, Ato H. Sparkman ("Mr. Sparkman"), is a resident of the State of New Jersey, and is the owner of 101 Burchard Avenue, New Jersey 07017 ("subject property"), wherein the subject property is encumbered by a security instrument for which, upon Plaintiff's information and belief, is the by-product of a transaction that is fraud *in factum*, unconscionable, predatory (per se), and unenforceable under state, federal, and common law for the matters of fact set forth below.

2.      Upon information and belief, Defendant Wells Fargo Bank, National Association ("WFBNA") is a privately held subsidiary of non-party Wells Fargo & Company ("WFC"), and a national banking association formed under the laws of the United States.  Effective December 31, 2008, non-party Wachovia Corporation ("Wachovia Corp.") as the parent company for Defendant Wachovia Mortgage, FSB, merged with and into WFC.   Defendant WFBNA may be served with process of this court upon Timothy J. Sloan as Chief Executive Officer ("CEO"), or upon any officer or authorized agent at Defendant's principal place of business located at 420 Montgomery Street, San Francisco, California 94104.

3.      Upon information and belief, Defendant Wells Fargo Home Mortgage ("WFHM") is a privately held subsidiary of non-party WFC, existing under the laws of the State of California. Defendant WFHM may be served with process of this court upon Timothy J. Sloan as CEO for the Defendant WFHM's parent company ("WFC"), or upon any officer or authorized agent at Defendant's principal place of business located at 1 Home Campus, Des Moines, IA 50328.

4.      Upon information and belief, Defendant Wachovia Mortgage, FSB ("WM-FSB") was a federally chartered savings institution formed under the laws of the United States, and a privately held subsidiary of non-party Wachovia Corp., prior to the latter's merger with and into non-party WFC effective December 31, 2008.  On or about November 1, 2009, Defendant WM-

FSB converted to a national bank with the name Wells Fargo Bank Southwest, National Association ("WFB-Southwest"), followed by a merger of WFB-Southwest with an into Defendant WFBNA. Defendant WM-FSB may be served with process of this court upon Timothy J. Sloan as CEO or upon any officer or authorized agent at Defendant's principal place of business located at 420 Montgomery Street, San Francisco, California 94104.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this matter involves federal claims arising under federal law, thereby invoking the Court's federal question jurisdiction.

6.      This Court has personal jurisdiction over Defendants, as Defendants have had the requisite minimum contacts with the State of New Jersey and Defendants have and continue to regularly conduct business in the State of New Jersey.

7.      Venue lies in the United States District Court for the District of New Jersey, as a substantial part of the property that is the subject of this action is located in the State of New Jersey.

8.      Further, venue lies in the United States District Court for the District of New Jersey, as a substantial part of the events or omissions upon which Plaintiffs' claims are based has occurred in the State of New Jersey.

## FACTS COMMON TO ALL COUNTS

9.      On August 24th, 2005, the Plaintiff, took ownership and possession of the subject property through a deed that was recorded by the Office of the Clerk for Essex County, NJ ("Essex County Clerk") on September 29th, 2005,[2] (along with an original purchase "mortgage loan" also

---

[2] book 6241, page 29

dated August 24th, 2005, and Mr. Sparkman along with his dependent child, has made the subject property thier residence.

10.    On November 30, 2007, the Plaintiff entered into what he then believed was a "traditional refinance mortgage loan" that was presented and prepared by WM-FSB as the party promising to loan a/k/a suffer a loss of $275,000.00, in return for Mr. Sparkman pledging the subject property as collateral, and Mr. Sparkman was the sole obligor for the obligation in dispute promising to pay 360 monthly installments of principal and interest, along with an escrow items (i.e. property taxes, and hazard insurance) to WM-FSB, its successor and assigns, and or the lawful holder of the obligation and security instrument ("mortgage").

11.    Thus, on November 30, 2007, the Plaintiff executed a series of documents associated with what Mr. Sparkman then believed was part of a "traditional refinance mortgage loan", the most critical of which included:

  a.  a paper promissory note ("note") instrument signed by Mr. Sparkman wherein WM-FSB designated itself as the lender suffering a loss of $275,000.00 on November 30, 2007 that set forth in relevant part;

  b.  a "mortgage" instrument signed by Mr. Sparkman wherein WM-FSB designated itself as the lender that suffered a loss of $275,000.00 on November 30, 2007, and the Plaintiff pledged the subject property as collateral to Defendant WM-FSB.

12.    Hence, Mr. Sparkman avers that as of the November 30, 2007 date assigned to the refinance mortgage loan in dispute, the Plaintiff was unaware and recently discovered that:

  a.  WM-FSB did not and never intended to loan a/k/a suffer a loss of $275,000.00 to the Plaintiff on November 30, 2007.;

5

b.  WM-FSB accepted the paper note as a loan from Mr. Sparkman in the amount of $275,000.00.;

c.  WM-FSB deposited the paper note as a loan from Mr. Sparkman into an account and drew $275,000.00 from said account without matching the new liability owed to Mr. Sparkman for his loan of $275,000.00 made to WM-FSB.; OR IN THE ALTERNATIVE

d.  WM-FSB, acting in the capacity of a "mortgage banker", issued commercial paper[3] as a short-term obligation and the monies received by WM-FSB from an undisclosed obligee funded the $275,000.00 in dispute.;

e.  WM-FSB converted Mr. Sparkman from "mortgagor" under Article 3 of New Jersey Uniform Commercial Code ("NJ UCC") into a securities issuer to facilitate a securities transaction under Article 8 and 9 of NJ UCC to create Mortgage Backed Securities ("MBS"), Collateralized Debt Obligations ("CDO"), and derivates[4] using the Plaintiff's collateral.;

13.  Additionally, upon the Plaintiff's knowledge and belief, on November 30, 2007,

---

[3] Citing "*Real Estate Finance – Theory and Practice, Third Edition*" by Terence M. Clauretie of the University of Nevada, Las Vegas and G. Stacy Sirmans of Florida State University defining mortgage origination by mortgage bankers using "Commercial Paper" as: "Mortgage Bankers have two principal sources of funds. One is commercial paper. Commercial paper is a short-term (180 to 270 days) obligation that carries a rate equal to the prime rate, but that can be somewhat higher or lower through the interest rate cycle. Only large mortgage bankers can issue commercial paper… Often, the mortgage banker will have received a commitment from an investor (FHLMC, for example) to purchase the loans for a set price… Each time, the mortgage banker usually retains the servicing of the loans."

[4] For a general description and discussion of the derivatives market, *see generally* S. Das, Swap & Derivative Financing - The Global Reference to Products, Pricing, Applications and Markets 3-36 (1993). See also "*Derivatives And Rehypothecation Failure It's 3:00 p.m., Do You Know Where Your Collateral Is*?." by Christian A. Johnson  Assistant Professor of Law, Loyola University Chicago School of Law. B.A.; MPrA, Utah; J.D., Columbia, 1990.

Continued on following page

WM-FSB illegally created and caused a transferable record a/k/a eNote ("electronic note")[5] to be part of the "refinance mortgage loan" in dispute that served as the catalyst for WM-FSB and its affiliate companies to create MBS that were issued by WM-FSB and its affiliates from an undisclosed "Special Purpose Vehicle" ("SPV"), and the certificates were sold to investors (i.e. pensions, insurance companies, etc.), and pursuant to Mortgage Loan Purchase Agreements ("MLPA"), Defendant WM-FSB retained only "servicing rights" (not ownership) for the fraud in factum transaction in dispute, and those servicing rights remained an asset on the books and records of WM-FSB upon the Defendant's parent company (non-party Wachovia Corp.) merging with and into WFC effective December 31, 2008.

14.     The Plaintiff further alleges and believes that by way of the aforementioned illegally created electronic note that WM-FSB caused Plaintiff to become part of the fraud *in factum* transaction in dispute, Defendant WM-FSB was able to profit from CDO's, derivative contracts, and rehypothecation[6] using Mr. Sparkman's property as collateral.  Hence, assuming that WM-FSB caused an electronic note to become part of the "refinance mortgage loan" in dispute, the Plaintiff avers that without Mr. Sparkman's knowledge and consent[7] as the sole obligor for the fraud *in factum* transaction, the Mr. Sparkman's electronic signature that is affixed

---

[5] See N.J.S.A. 12A:9-105

[6] Rehypothecation occurs when an intermediary holding securities on behalf of investors—often a broker–dealer acting as prime broker for its customers—grants a security interest in (or otherwise encumbers) those securities in order to obtain financing for itself.  (Citing "*Distorting Legal Principles*" by Stanley A. Star Professor of Law & Business, Duke University School of Law; Founding/Co-Academic Director, Duke Global Capital Markets Center (July 15, 2010).  See also "*Derivatives And Rehypothecation Failure It's 3:00 p.m., Do You Know Where Your Collateral Is?.*"  by Christian A. Johnson   Assistant Professor of Law, Loyola University Chicago School of Law. B.A.; MPrA, Utah; J.D., Columbia, 1990.

[7] See Uniform Electronic Transactions Act ("UETA") (See 15 U.S.C. § 7021.  UETA §16).;

Continued on following page

upon the electronic note instrument created by Defendant WM-FSB, is a forgery[8] because Mr. Sparkman *never* (emphasis added) electronically signed the electronic note as required by law. [9]

15.     Thus, for the foregoing reasons set forth above within paragraphs 12 through 16, and re-stated herein as though fully incorporated by reference, the Plaintiff' avers that the refinance "mortgage loan" in dispute is fraud *in factum*,[10] unconscionable, and unenforceable under state, federal, and common law.

16.     Unaware of the aforementioned issues set forth above within paragraphs 12 through 16, the Plaintiff proudly fulfilled his obligation under the "refinance mortgage loan" in dispute by making the first timely installment of principal and interest in the amount of $ 1715.55 plus escrow expenses (i.e. property taxes and hazard insurance) as $723.11, and thereon for the duration of the years 2007-2011 to WM-FSB in its self-declared capacity as servicer, not as the owner of the refinance mortgage loan in dispute.

---

[8] N.J.S.A. 2C:21-1 Forgery and Related Offenses; N.J.S.A. 2C:21-17. Impersonation; theft of identity; crime; N.J.S.A.2C:21-17.3 Trafficking in personal identifying information pertaining to another person; and N.J.S.A. 2C:21-16 Securing execution of documents by deception.

[9] Electronic Signatures in Global and National Commerce Act ("ESIGN") (See 15 U.S.C. § 7001 et seq.).

[10] Fraud *in factum* is consider a good defense even against a holder in due course, provided there has been no negligence on the part of the maker. See *Amsterdam v. De Paul*, 70 N.J. Super. 196 (1961) 175 A.2d 219, wherein the Court stated in part, that: "…A negotiable instrument which is the product of fraud in the factum, unaccompanied by negligence, as distinguished from an instrument which is the product of fraud *200 in the treaty, is void, and not merely voidable. As stated in 17 C.J.S. Contracts § 140, p. 495: "Where some trick is used to substitute another instrument for the one which it is intended to sign, as where a note is substituted for a receipt, and in like cases, the signature has no legal effect, * * *. Hence there is no agreement which can give rights to anyone, except where the signer is estopped by negligence or otherwise to set up the truth as against bona fide third persons * * *."".  See also N.J.S.A. § 12A:3-305. Defenses and claims in recoupment, that states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,…".

17. On or about December 31, 2008, the Plaintiff was unaware and recently discovered that non-party Wachovia Corp. as the parent company for Defendant WM-FSB as the originator for the fraud in factum "refinance mortgage loan" in dispute, merged with and into non-party WFC. Further, for the duration of the year 2008, Mr. Sparkman *never* (emphasis added) received a "Notice of Sale – Transfer of Ownership" communication from any party asserting to be the new creditor for the "mortgage loan" in dispute, despite WM-FSB's causing the obligation to be transferred using the aforementioned forged – unlawfully created electronic note that was illegally made part of the fraud in factum "mortgage loan" and the process of securitization, without WM-FSB documenting the transfer and sale of the obligation by recording assignment instrument(s) with the Essex County Clerk wherein WM-FSB remained the "mortgagee" of record for the November 30, 2007 "security instrument" in dispute.

18. On or about November 1, 2009, the Plaintiff was not aware and recently discovered that WM-FSB converted to a national bank with the name Wells Fargo Bank Southwest, National Association ("WFB-Southwest"), followed by a merger of WFB-Southwest with an into Defendant WFBNA. As a result of and shortly after the aforementioned mergers, Defendants WFBNA and WFHM begin using the mail and wire to introduce itself as the servicer for the fraud in factum "refinance mortgage loan" in dispute, and from thereon, demanded from the Plaintiff payment of principal, interest, and escrow expenses for property taxes and hazard insurance. Further, for the duration of the year 2009, Mr. Sparkman *never* (emphasis added) received a "Notice of Sale – Transfer of Ownership" communication from Defendants WFBNA and WFHM, or any party asserting to be the new creditor for the fraud in factum "refinance mortgage loan" in dispute as required by 15 U.S.C. § 1641(g) wherein the new owner of a mortgage loan must provide an obligor with the following no later than 30 days after the date on which a mortgage loan is sold:

9

a. the identity, address, telephone number of the new creditor;

b. the date of transfer;

c. how to reach an agent or party having authority to act on behalf of the new creditor;

d. the location of the place where transfer of ownership of the debt is recorded; and

e. any other relevant information regarding the new creditor.

Thus, from the years 2007-2018, WM-FSB has remained the "mortgagee" of record for the fraud in factum "mortgage" recorded by the Essex County Clerk on December 7, 2007.

19.    On December 20, 2010, before Defendants WFBNA and WFHM initiated an illegal foreclosure debt collection action against Mr. Sparkman in the State Court of New Jersey on February 8, 2012 by deliberately misrepresenting WFBNA as the owner and holder of the fraud *in factum* "refinance mortgage loan" in dispute, that was originated in the name of WM-FSB as the purported lender/holder, the Plaintiff was unaware and recently discovered that the Acting Administrative Director of the Courts entered Administrative Order 01-2010 (In The Matter Of Residential Mortgage Foreclosure Pleading And Document Irregularities), and documented the unfair, deceptive, and illegal foreclosure practices of several foreclosing plaintiffs including, but not limited to, WFBNA by stating in part that:

> Wells Fargo employees have admitted in depositions to signing documents without verifying the information contained therein. In one foreclosure case, a loan administration manager stated that he signed 50 to 150 documents per day, including assignments, declarations, and affidavits related to foreclosure. He signed the documents without checking the information and relied on employees of another department to ensure the accuracy of the information. The manager and others with the same position could sign as a Vice President of Loan Documentation for purposes of executing loan documents but were not otherwise officers of the company.

10

In another foreclosure case, an employee stated that she spent about two hours a day signing between 300 to 500 documents. She held the title of Vice President of Loan Documentation for the purpose of signing the documents. She did not review or have personal knowledge of the facts in the documents, relying on outside counsel or an employee in the foreclosure department for accuracy. Similarly, for a bankruptcy case in Texas, a Wells Fargo employee stated that she sometimes did not personally review documents before signing, relying on the expertise of the document preparer.

On October 27, 2010, Wells Fargo stated in a press release that "[a]s part of the company's review of its foreclosure affidavit procedures, the company has identified instances where a final step in its processes relating to the execution of the foreclosure affidavits (including a final review of the affidavit, as well as some aspects of the notarization process) did not strictly adhere to the required procedures." Wells Fargo then announced that it would "submit supplemental affidavits for approximately 55,000 foreclosures" in all judicial foreclosure states.

Others have raised questions about the entire industry's handling of foreclosure matters.

Furthermore, for the duration of the years 2008-2018, Mr. Sparkman *never* (emphasis added) received a "Notice of Sale – Transfer of Ownership" communication from Defendants WFBNA and WFHM, or any party asserting to be the new creditor for the fraud in factum "refinance mortgage loan" in dispute as required by 15 U.S.C. § 1641(g), and WM-FSB remained the "mortgagee" of record for the fraud in factum "mortgage" recorded by the Essex County Clerk on December 7, 2007.

20.    On April 13, 2011, before Defendants WFBNA and WFHM initiated an illegal foreclosure debt collection action against the Mr. Sparkman in the State Court of New Jersey on February 8, 2012 by deliberately misrepresenting WFBNA as the owner and holder of the fraud *in factum* "refinance mortgage loan" in dispute that was originated in the name of WM-FSB as the purported lender, the Plaintiffs were unaware and recently discovered that the Comptroller of the Currency of the United States of America ("Comptroller") through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC") as part of an interagency horizontal review of major residential mortgage servicers and examination of the residential real

11

estate mortgage foreclosure processes, entered a consent judgment against Defendant WFBNA in

In the Matter of Wells Fargo Bank, N.A. (Order No.: AA-EC-11-19) as servicer (not owner) for a

portfolio of 8,900,000, upon identifying certain deficiencies and unsafe or unsound practices in

residential mortgage servicing and in WFBNA's initiation and handling of foreclosure proceedings

from 2008 through 2010, and prohibited WFBNA from further engagement in the following unfair,

deceptive, and illegal practices including, but not limited to:

    a. filing or causing to be filed in state and federal courts affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

    b. filing or causing to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary;

    c. litigating foreclosure proceedings and initiating non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;

    d.  failing to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

    e.  failing to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; AND

    f.  failing to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

Furthermore, for the duration of the years 2007-2018, Mr. Sparkman *never* (emphasis added) received a "Notice of Sale – Transfer of Ownership" communication from Defendants WFBNA and WFHM, or any party asserting to be the new creditor for the fraud in factum "refinance mortgage loan" in dispute as required by 15 U.S.C. § 1641(g), and WM-FSB remained the "mortgagee" of record for the fraud in factum "mortgage" recorded by the Essex County Clerk on December 7, 2007.

21.    On March 12, 2012, before Defendants WFBNA and WFHM initiated an illegal foreclosure debt collection action against Mr. Sparkman in the State Court of New Jersey on February 8, 2012 by deliberately misrepresenting WFBNA as the owner and holder of the fraud *in factum* "refinance mortgage loan" in dispute that was originated in the name of WM-FSB as the purported lender, the Plaintiffs' were unaware and recently discovered that the Department of Justice ("DOJ"), the Department of Housing and Urban Development ("HUD") and 49 State Attorney Generals, including the New Jersey State Attorney General ("NJ AG"), announced a $25 billion agreement with the nation's five largest mortgage servicers (not owners of mortgage loans) of which included Defendant WFBNA, in order to:

    a.  address mortgage loan servicing and foreclosure abuses.;

b.  prevent foreclosure abuses such as forgery, false notarizations, and other improper documentation practices, and lost paperwork.;

c.  require stricter oversight of foreclosure processing, including third-party vendors of which includes foreclosure attorneys.;

d.  new requirements to undertake pre-filing reviews of certain documents filed in bankruptcy court.;

e.  create new servicing standards in order to make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first.;

f.  restrict servicers from foreclosing while the homeowner is being considered for a loan modification.;

g.  require servicers to remediate any harm to borrowers that are identified in quarterly reviews overseen by the monitor and, in some instances, conduct full look-backs to identify any additional borrowers who may have been harmed.; AND

h.  require any servicer who violates the requirements of the consent judgment to pay penalties of up to $1 million per violation or up to $5 million for certain repeat violations.

22.     On March 14, 2012, the United States of America and 49 State Attorney Generals (including the NJ AG) filed a civil complaint in the United States District Court for the District of Columbia (See United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC)) wherein the NJ AG appeared on behalf of Mr. Sparkman and similarly situated victims pursuant to protection enforcement authority conferred on the NJ AG by state law and

14

pursuant to *parens patriae* and common law authority, seeking injunctive relief, restitution for consumer, and civil penalties against WFBNA as a servicer (not owner) for a portfolio of residential mortgage loans for engaging in unfair, deceptive, and illegal practices including, but not limited, "*Unfair, Deceptive, and Unlawful Modification and Loss Mitigation Processes*" and "*Wrongful Conduct Related to Foreclosures*" such as:

    a.  failing to perform proper loan modification underwriting;

    b.  failing to gather or losing loan modification application documentation and other paper work;

    c.  failing to provide adequate staffing to implement programs;

    d.  failing to adequately train staff responsible for loan modifications;

    e.  failing to establish adequate processes for loan modifications;

    f.  allowing borrowers to stay in trial modifications for excessive time periods;

    g.  wrongfully denying modification applications;

    h.  failing to respond to borrower inquiries;

    i.  providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process;

    j.  providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

    k.  providing false or misleading information to consumers while scheduling and conducting foreclosure sales during the loan application process and during trial loan modification periods;

    l.  misrepresenting to borrowers that loss mitigation programs would provide

relief from the initiation of foreclosure or further foreclosure efforts;

m.  failing to provide accurate and timely information to borrowers who are in need of, and eligible for, loss mitigation services, including loan modifications;

n.  falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

o.  miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

p.  failing to properly identify the foreclosing party.;

q.  charging improper fees related to foreclosures.;

r.  preparing, executing, notarizing or presenting false and misleading documents, filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments).;

s.  preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits.  This practice of repeated false attestation of information in affidavits is popularly known as "robosigning."  Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and approval of the Banks.;

t.  executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law.; AND

u.  misrepresenting the identity, office, or legal status of the affiant executing

16

foreclosure-related documents.

23.     On April 4, 2012, after Defendants WFBNA and WFHM initiated an illegal foreclosure debt collection action against n Mr. Sparkman in the State Court of New Jersey on February 8, 2012 by deliberately misrepresenting WFBNA as the owner and holder of the fraud *in factum* "refinance mortgage loan" in dispute that was originated in the name of WM-FSB as the purported lender, WFBNA entered into a settlement agreement with the United States of America and 49 State Attorney Generals (including the NJ AG) that was coined the "*National Mortgage Settlement*" that prohibited Defendant herein WFBNA as the servicer (not the owner) of a portfolio of residential mortgage loans from further engagement in the aforementioned unfair, deceptive, and illegal practices cited in the March 14, 2012 civil complaint in United States of America, et.al. v. Bank of America N.A., et.al, (Docket No. 1:12-cv-00361 RMC) that took place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, to avoid penalties of up to $1 million per violation or up to $5 million for certain repeat violations under the following laws set forth within the "Terms and Conditions" (Id. at Page 233):

    a.  the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").;

    b.  the False Claims Act.;

    c.  the Racketeer Influenced and Corrupt Organizations Act.;

    d.  the Real Estate Settlement Procedures Act.;

    e.  the Fair Credit Reporting Act.;

    f.  the Fair Debt Collection Practices Act.;

    g.  the Truth in Lending Act.;

    h.  the Interstate Land Sales Full Disclosure Act.;,

i. 15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals").; AND

j. sections 502 through 509 (15 U.S.C. § 6802-6809) of the Gramm-Leach Bliley Act except for section 505 (15 U.S.C. § 6805) as it applies to section 501(b) (15 U.S.C. § 6801(b)).

24. The Plaintiff avers that throughout the year of 2012, Mr. Sparkman begin his earnest efforts to secure a modification from WFBNA and WFHM.

25. Hence, despite Defendant WFBNA's obligations pursuant to the New Jersey Assurance entered on October 5, 2011, along with WFBNA's duties pursuant to the April 4, 2012 consent judgment entered in United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC), and Mr. Sparkman's documentation of hardship and ability to pay. Defendants WFBNA and WFHM deceptively instructed the Plaintiff to participating in a privatized modification program as opposed to the HAMP program applied to.

26. Thus, the Plaintiff avers that the aforementioned instructions given by WFBNA and WFHM was not only deceptive upon its own merit, but also in violation of WFBNA's obligation to provide modifications pursuant to the October 5, 2011 New Jersey Assurance, and in violation of WFBNA's obligations under the April 4, 2012 consent judgment entered in United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv-00361 RMC).

27. Hence, upon Defendants WFBNA and WFHM commencing the aforementioned foreclosure debt collection action on February 8, 2012 asserting ownership and possession of the original "note" and "mortgage" associated with the fraud in factum transaction for which WM-FSB was declared the original lender that suffered an actual loss of $275,000 on November 30, 2007, the Defendants have yet to present any evidence to prove the "mortgage loan" remained an

18

asset upon the books and records of WM-FSB upon the latter's merger with and into Wells Fargo Bank Southwest, National Association ("WFB-Southwest"), followed by a merger of WFB-Southwest with an into Defendant WFBNA effective November 1, 2009, and that said merger resulted in the transfer of the "mortgage loan" to WFBNA as an asset upon the Defendant's books and records.  Furthermore, Mr. Sparkman **never** (emphasis added) received a "Notice of Sale – Transfer of Ownership" communication from Defendants WFBNA and WFHM, or any party asserting to be the new creditor for the fraud in factum "refinance mortgage loan" in dispute as required by 15 U.S.C. § 1641(g), and WM-FSB remained the "mortgagee" of record for the fraud in factum "mortgage" recorded by the Essex County Clerk on December 7, 2007.

28.    On or about May 18, 2016, Defendant WFBNA through non-party Reed Smith LLP filed the second and final application for entry of final judgment in the aforementioned foreclosure debt collection action before the Superior Court, and included, in part:

   a. a certification of proof of amount due and schedules that was purportedly made and signed by Jameka Young as an alleged "Vice President Loan Documentation" for the Plaintiff, asserting to the books and records of the Plaintiff, and further declaring in ¶3 that "Wells Fargo Bank, N.A. is either the original payee of the Promissory Note or the Promissory Note has been duly indorsed.;

   b. a certification purportedly made by non-party Allyson Keisel, Esq. of Phelan Hallinan Diamond & Jones pursuant to Rule 4:64-2(d) attesting to the accuracy of foreclosure documents and factual assertions.; AND

19

   c.  a purported true copy of the "note" in dispute that was allegedly certified by non-party Allyson Keisel, Esq. of Phelan Hallinan Diamond & Jones, that does not display any indorsements by WM-FSB as the original payee.

29. On June 28, 2016, the Superior Court of New Jersey's Office of Foreclosure entered final judgment and a writ of execution in favor of WFBNA allowing the Essex County Sheriff to initiate a sale of the Plaintiffs' home, at which time, Mr. Sparkman was not aware and later discovered that the aforementioned certification made by Jameka Young ("Keisel Certification") as an alleged "Vice President Loan Documentation" for the Plaintiff in that case that was submitted to the Superior Court of New Jersey by Defendant WFBNA in support of the latter's application for final judgment:

   a.  fails to identify the physical location of the original "mortgage note" in dispute.;

   b.  fails to detail the physical delivery of the original "note" and "mortgage" in dispute.;

   c.  fails to demonstrate that Jameka Young had personal knowledge regarding WFBNA's claim to be the holder and owner of the note in dispute prior to commencement of the foreclosure debt collection action on February 8, 2012;

   d.  fails to establish that the "mortgage loan" in dispute remained an asset upon the books and records of the original lender WM-FSB; AND

   e.  fails to establish that WFBNA acquired ownership or control of the "note" and "mortgage" by way of the alleged series of mergers with WM-FSB into WFB-Southwest, followed by a merger of WFB-Southwest with an into Defendant WFBNA effective November 1, 2009.

30.     Hence, the Plaintiff herein avers that the aforementioned certification made by Allyson Keisel, Esq. on behalf of Defendant WFBNA and submitted in support of the latter's application for final judgment before the Superior Court of New Jersey displays WFBNA's willful continuation of the unfair, deceptive, and unlawful certification practices that were subject of and prohibited by the April 13, 2011 consent order entered in In the Matter of: Wells Fargo Bank, N.A. (AA-EC-11-19) and the April 4, 2012 consent judgment entered in United States of America v. Bank of America Corporation, et al. (Case No. 1:12-cv-00361yougn-RMC), wherein Jameka Young lacked the capacity of "Vice President Loan Documentation" claimed within the certification, and lacked knowledge as to the character, ownership, and physical whereabouts of the original "mortgage loan" in dispute.

31.     Further, the Plaintiffs recently discovered that the "Account History" attached to the aforementioned certification made by WFBNA and submitted to the Superior Court of New Jersey by WFBNA, displays a section for an "Investor #" and "Investor Account #" that was redacted by Defendants WFBNA and WFHM to conceal from the trier of fact and Plaintiffs that WM-FSB caused the fraud in factum transaction to be removed from the Defendant's books and records through securitization without documenting the sale and transfer to an unidentified trust entity for which WM-FSB remained the servicer (not the owner), and WFBNA acquired servicing for the "mortgage loan" in dispute (not ownership) as a result of the purported merger of WM-FSB into WFB-Southwest, and the latter with and into WFBNA effective November 1, 2009.

32.     Throughout the duration of the years 2007-2018, the Plaintiff never received a communication from Defendant WFBNA (or any other party) as required by 15 U.S.C. § 1641(g) documenting a sale and transfer of the "note" and "mortgage" in dispute to WFBNA (or any other party), no instruments styled as an "assignment of mortgage" were recorded by the Essex County

21

Clerk's Office indicating a sale and or transfer of the "mortgage loan" in dispute, and WM-FSB remained the "mortgagee" of record for the security instrument recorded on December 7, 2007.

33.    On August 8, 2017, the Plaintiff filed a voluntary Chapter 13 Bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey (Case No.: 17-25582 RG), to stay a Sheriff Sale of their home that was being illegally foreclosed on by Defendant WFBNA.

34.    On or about August 18, 2017, WFBNA through non-party Phelan Hallinan, Diamond, and Jones PC submitted an objection to the Plaintiff's Chapter 13 Plan in the aforementioned bankruptcy case and made claims of being owed money by the Plaintiff as a secured creditor.

35.    The Plaintiff, nevertheless, avers that the aforementioned varying "note" instruments submitted to the Superior Court of New Jersey by Defendants WFBNA and / or WFHM on February 8, 2012, the former of which is still payable to WM-FSB as the original lender, and the latter of which displays an undated stamp presented to be an indorsement in blank by WFBNA as the purported successor by merger to WM-FSB, displays WFBNA's and WFHM's willful continuation of the unfair, deceptive, and unlawful practices that were prohibited with the April 13, 2011 consent order entered in In the Matter of: Wells Fargo Bank, N.A. (AA-EC-11-19) and the April 4, 2012 consent judgment entered in United States of America v. Bank of America Corporation, et al. (Case No. 1:12-cv-00361-RMC).   Furthermore, the Plaintiffs aver that Defendants WFBNA's and WFHM's propensity to create counterfeit stamps asserted to be indorsements was previously exposed in Mota v. Wells Fargo Bank, N.A., et al. (Adv. Proc. No. 13-01553) upon Hon. Judge Allan Gropper allowing a homeowner's attorney to present into evidence the "*Wells Fargo Home Mortgage Foreclosure Attorney Procedure Manual, Version*

22

*1*" which is a step-by-step guide created by WFBNA and WFHM instructing foreclosure attorneys on how and when to create fraudulent stamps that are misrepresented to be indorsements.

36.     Throughout the duration of the years 2007-2018, the Plaintiffs never received a communication from Defendant WFBNA (or any other party) as required by 15 U.S.C. § 1641(g) documenting a sale and transfer of the "note" and "mortgage" in dispute to WFBNA (or any other party), no instruments styled as an "assignment of mortgage" were recorded by the Burlington County Clerk's Office indicating a sale and or transfer of the "mortgage loan" in dispute, and WM-FSB remained the "mortgagee" of record for the security instrument recorded December 7, 2007.

37.     The Plaintiff avers that to present date, Defendants WFBNA and WFHM have failed to:

a.  forward the Plaintiff a communication documenting a sale and transfer of the "note" and "mortgage" in dispute to WFBNA (or any other party) as required by 15 U.S.C. § 1641(g).;

b.  offer the Plaintiff any relief from the illegal "mortgage loan" in dispute as required by the New Jersey Assurance entered into on October 5, 2010.; AND

c.  accept or deny the completed modification application received by WFBNA and / or WFHM on December 7, 2018.

38.     Today, the Plaintiff and his child anxiously await the authorities to approach the subject property to remove Mr. Sparkman from his home as a result of the aforementioned illegal refinance "mortgage loan", and the unlawful enforcement and foreclosure of said transaction by Defendants WFBNA and WFHM, while the stress continues to have a deleterious affect on the health condition of Mr. Sparkman, and neither WFBNA and WFHM are able to produce

23

authenticated books and records to prove that either purchased the fraud in factum "mortgage loan" in dispute, or to demonstrate the loss which the Defendants claimed to have suffered.

# COUNTS

## COUNT ONE – ALL DEFENDANTS
### VIOLATIONS OF NEW JERSEY CIVIL RICO (N.J.S.A. 2C:41-1 ET SEQ.), AND FEDERAL CIVIL RICO (18 USC §1962(C)); ACTIONABLE PURSUANT TO N.J.S.A. 2C:41-4C, AND 18 USC § 1964(C);

39. The Plaintiff adopts the factual allegations set forth above in ¶¶1-50 as though fully set forth herein by reference.

40. The Defendants designated in count one (1) constitute an "Enterprise" as defined in N.J.S.A. 2C:41-1 et seq. and 18 U.S.C. §1961(4).

41. The enterprise and or enterprises have an existence apart from and beyond the racketeering activity complained of in this action.

42. The Defendants designated in count one (1) violated the New Jersey and Federal Civil RICO statutes by conducting or participating, directly or indirectly, in the conduct of the affairs of an enterprise or enterprises, through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c) and -2(d), and 18 U.S.C. §1962(c), as set forth within ¶¶1-50 as though fully incorporated herein by reference.

43. The acts by the Defendants designated in count one (1) constitutes a pattern of racketeering activity that has continued and escalated beginning in or around February 25, 2008 and continues to present date.

44. The acts by the Defendants designated in count one (1) constitutes prohibited activities in violation of N.J.S.A. 2C:41-2 and 18 U.S.C. §1962(c) for the Defendants have

received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated as a principal within the meaning of N.J.S.A 2C:2-6 and 18 U.S.C. §1961(6) to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce.

45.    The acts by the Defendants set forth within ¶¶1-50 constitutes deceptive business practices in violation of N.J.S.A. 2C:21-7 for the Defendants made false or misleading written statements for the purpose of obtaining property, and false or misleading written statements for the purpose of promoting the sale of securities, and omitted information required by law to be disclosed in written documents relating to securities.

46.    The acts by the Defendants set forth within ¶¶1-50 constitutes tampering with or fabricating physical evidence in violation of N.J.S.A. 2C:28-6 for the defendants altered and or concealed records, documents, or other things of physical substance with purpose to impair its verity or availability in such proceedings or investigations; and the defendants made, devised, prepared, presented, offered or used articles, objects, records, documents or other things of physical substance knowing them to be false and with purpose to mislead a public servant who is engaged in such proceeding or investigation.

47.    The acts by the Defendants set forth within ¶¶1-50 constitutes tampering with public records or information in violation of N.J.S.A. 2C:28-7 for the defendants knowingly made a false entry in, or false alteration of, any record, document or thing received or kept by, the government for information or record, and the Defendants made, presented, offered for filing, or used a record, document or thing knowing it to be false, and with purpose that it be taken as a genuine part of information or records.

48.    The acts by Defendants set forth within ¶¶1-50 constitutes frauds relating to public records and recordable instruments in violation of N.J.S.A. 2C:21-3 for the defendants offered a false instrument for filing, knowing the written instrument contains a false statement or false information, and offered or presented it to a public office or public servant with knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

49.    The acts by the Defendants set forth within ¶¶1-50 constitutes securing execution of documents by deception in violation of N.J.S.A. 2C:21-16 for the defendant caused or induced the Plaintiff to execute instruments affecting, purporting to affect, or likely to affect the pecuniary interest of the Plaintiff by means of deception as to the contents of the instruments.

50.    The acts by the Defendants set forth within ¶¶1-50 constitutes knowledge inferred in violation of N.J.S.A. 2C:21-26 for the Defendants transported or possessed the Plaintiff's property in a fashion inconsistent with the ordinary or usual means of transportation or possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property.

51.    The acts by the Defendants set forth within ¶¶1-50 constitutes conspiracy in violation of N.J.S.A. 2C:5-2 for the Defendants agreed with each other, and or other persons, that they or one or more of them will engage in conduct which constitutes such crime, and or they agreed to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

52.    The acts by the Defendants set forth within ¶¶1-50 constitutes forgery in violation of N.J.S.A. 2C:21-1 for the Defendants, with purpose to defraud or injure the Plaintiffs, with knowledge that they were facilitating a fraud or injury, they: (1) Altered and or changed

26

instruments of another without their authorization; (2) made, completed, executed, authenticated, issued or transferred writings so that it purports to be the act of another who did not authorize that act or of a fictitious person, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or (3) Uttered writings which they knew to be forged in a manner specified above.

53.    The acts by the Defendants set forth within ¶¶1-50 constitutes impersonation and identity theft in violation of N.J.S.A. 2C:21-17 for the defendants obtained personal identifying information pertaining to the Plaintiff and used that information, or assisted another person in using the information, in order to assume the identity of or represent themselves as Mr. King and Mrs. King, without the Plaintiffs' authorization and with the purpose to fraudulently obtain or attempt to obtain a benefit or services by using the Plaintiff's name.

54.    The acts by the Defendants set forth within ¶¶1-50 constitutes mail fraud in violation of 18 U.S.C. §1341 for the defendants devised a scheme to defraud, obtain money, or the subject property by means of false or fraudulent pretenses, representations, or promises, to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use counterfeit obligations, securities, for the purpose of executing such scheme or artifice, placed in post offices or authorized depository for mail matter, to be sent or delivered by the Postal Service, deposited, or caused to be deposited, to be sent or delivered by private or commercial interstate carrier, or knowingly caused to be delivered by mail or such carrier.

55.    The acts by Defendants set forth within ¶¶1-50 constitutes fictitious name in violation of 18 U.S.C. §1342 for the defendants, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341, or any other unlawful business, used or assumed, or requested others to be addressed by, fictitious,

27

false, or assumed titles, or names, other than their own proper name.

56. The acts by the Defendants set forth within ¶¶1-50 constitutes wire fraud in violation of 18 U.S.C. §1343 for the defendants devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire in interstate commerce, writings for the purpose of executing such scheme or artifice.

57. The acts by the Defendants set forth within ¶¶1-50 constitutes transportation of stolen goods, securities, moneys, and or articles used in counterfeiting in violation of 18 U.S.C. § 2314 for the defendants transported, transmitted, or transferred in interstate commerce, securities of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, and devised a scheme or artifice to defraud, for obtaining money or property from the Plaintiff by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported interstate in the execution or concealment of a scheme or artifice to defraud the Plaintiffs' of money or property having a value of $5,000 or more, with unlawful or fraudulent intent, transported in interstate commerce falsely made, forged, altered, or counterfeited securities knowing the same to have been falsely made, forged, altered, or counterfeited.

58. The acts by the Defendants set forth within ¶¶1-50 constitutes interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 for the defendants have: (a) obstructed, delayed, or affected commerce by robbery or extortion or attempted or conspired so to do, or committed or threatened physical removal of Plaintiffs' from the subject property, and the taking of the subject property under color of official right.

59. The aforementioned acts by the Defendants set forth within ¶¶1-50 constitutes laundering of falsely made monetary instruments in violation of 18 U.S.C. § 1956 because the

Defendants: (1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with (i) the intent to promote the carrying on of specified unlawful activity; or (ii) the intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

60.     The aforementioned acts by the Defendants set forth within ¶¶1-50 constitutes engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 upon the Defendants knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

61.     The acts by the Defendants set forth within ¶¶1-50 constitutes misprision of felony in violation of 18 U.S.C. § 4 for the defendants had knowledge of the actual commission of a felony cognizable by a court of the United States, and concealed said knowledge, and did not as soon as possible make known the same to some judge or other person in civil or authority under the United States.

62.     The aforementioned acts set forth within ¶¶1-50 by Defendants WFBNA and WFHM throughout the Plaintiffs' bankruptcy proceedings constitutes concealment, false oaths and claims in violation of 18 U.S.C. § 152 because the Defendants: (1) knowingly and fraudulently made false oaths or accounts in or in relation to Mr. Sparkman's case under title 11; (2) knowingly and fraudulently made false declarations or statements under penalty of perjury in or in relation to

29

Mr. Sparkman's case under title 11; (3) knowingly and fraudulently presented a false claim for proof against the estate of Mr. Sparkman; AND (4) after the filing of Mr. Sparkman's case under title 11 or in contemplation thereof, knowingly and fraudulently concealed, destroyed, mutilated, falsified, or made false entries in any recorded information (including books, documents, records, and papers) relating to the property or financial affairs of Mr. Sparkman.

63.     The aforementioned acts set forth within ¶¶1-50 by Defendants WFBNA and WFHM throughout Mr. Sparkman's bankruptcy proceeding constitutes bankruptcy fraud in violation of 18 U.S.C. § 157 because the Defendants: devised or intended to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so, (1) filed documents in the Plaintiffs' proceeding under title 11; AND (2) made a false or fraudulent representation, or claim concerning or in relation to Mr. Sparkman's proceeding under title 11.

64.     The aforementioned acts set forth within ¶¶1-50 by Defendants WFBNA and WFHM throughout Mr. Sparkman's bankruptcy proceeding constitutes alteration and falsification of records in bankruptcy in violation of 18 U.S.C. §1519 for the Defendants knowingly altered, concealed, covered up, falsified, and made false entries of record and documents, with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of the Plaintiffs' case filed under title 11.

65.     The acts by the Defendants set forth within ¶¶1-50 constitutes conspiracy against rights in violation of 18 U.S.C. §241 for the defendants conspired to injure, oppress, threaten, or intimidate the Plaintiff in the free exercise or enjoyment of rights or privilege secured to Plaintiff by the Constitution and laws of the United States, including but not limited to: (i) the right to contract; (ii) the right to own, maintain, and be secure in Plaintiff's property right from unlawful

seizures; AND (iii) to be free of usury.

66.     The Plaintiff avers that the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the cross-plaintiff.

67.     The acts by the Defendants violates N.J.S.A. 2C:41-1 et seq. and 18 USC §1962(c)) and has caused injury to the Plaintiff as contemplated by N.J.S.A. 2C:41-4c, and 18 USC § 1964(c), in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud in factum "mortgage transaction", and other costs to defend Mr. Sparkman's property.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

   a.   Awarding Plaintiff actual damages against Defendants;
   b.   Awarding Plaintiff damages for emotional distress against Defendants;
   c.   Awarding Plaintiff's attorney fees and costs against Defendants;
   d.   Awarding Plaintiff punitive damages against Defendants;
   e.   Awarding Plaintiff treble damages against Defendants
   f.   Imposing any other appropriate monetary sanctions against Defendants; and
   g.   Any other relief that this Court deems just and proper.

## COUNT TWO – ALL DEFENDANTS
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8-2); ACTIONABLE PURSUANT TO N.J.S.A. 56:8-19;

68.     The Plaintiff adopts the factual allegations set forth above in ¶¶1-50 and Count One as though incorporated herein by reference.

69.     The Defendants designated in Count Two have each used or caused to be employed by other persons unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and knowingly concealed, suppressed, and omitted material facts with intent that the Plaintiffs rely upon such concealment, suppression or omission, in connection

with the "origination" of the "mortgage transaction' in dispute.

70. The Plaintiff avers the unfair, deceptive, and unlawful practices by the Defendants misled and deceived Mr. Sparkman, resulting in damages thereby, constituting unlawful practices in violation of N.J.S.A. 56:8-2, and has caused injury to Plaintiffs as contemplated by N.J.S.A. 56:8-19 in actual damages of emotional distress, loss of monies paid towards a *fraud in factum* "mortgage transaction", and other costs to defend Mr. Sparkman's property and reputation.

71. At all times relevant and material hereto, the "mortgage loan" in dispute was fraud in factum from its inception, none of the Defendants herein did owned the debt as alleged, the Plaintiffs were consumers of the Defendants goods and services, and as such the conduct of the Defendants and the transaction was governed by the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. 56:8-1 et seq.

72. At all times relevant and material hereto the Defendants did violate the New Jersey Consumer Fraud Act by engaging in deceptive and fraudulent practices as stated above.

73. The aforementioned false, unfair, deceptive, and unlawful practices by the Defendants herein were in violation of the NJCFA for which the New Jersey Supreme Court in *Gonzalez v. Wilshire Credit Corp.* (August 29, 2011), held:

> "Lending institutions and their servicing agents are not immune from New Jersey's Consumer Fraud Act, N.J.S.A. §§ 56:8-1 to 56:8-195; they cannot prey on the unsophisticated, those with no bargaining power, those bowed down by a foreclosure judgment and desperate to keep their homes under seemingly any circumstances."

74. In *Cox v. Sears Roebuck*, September 15, 1994 138 N.J. 2 A-123 September term 1993." the NJ Supreme Court held: "The amendment to the Consumer Fraud Act, *N.J. Stat. Ann.*

*§§ 56:8-1* to 20, provides for private causes of action, with an award of treble damages, attorneys' fees, and costs."

75. Upon "strict scrutiny" application, the Court would be compelled to protect Plaintiff against blatant fraud being perpetrated by the Defendants as well as the Court under the "color of law". To do otherwise would be a travesty of justice.

76. "Like most remedial legislation, the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1 to 20*, should be construed liberally in favor of consumers."

77. "An improper debt or lien against a consumer fraud plaintiff may constitute a loss under the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1 to 20*, (the Act) because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act."

78. The actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in her favor and against Defendants, as follows:

a. Awarding Plaintiff actual damages against Defendants;
b. Awarding Plaintiff damages for emotional distress against Defendants;
c. Awarding Plaintiff attorneys' fees and costs against Defendants;
d. Awarding Plaintiff punitive damages against Defendants;
e. Awarding Plaintiff treble damages against Defendants;
f. Imposing any other appropriate monetary sanctions against Defendants; and
g. Any other relief that this Court deems just and proper.

## COUNT THREE – WFBNA AND WFHM
## FEDERAL FAIR DEBT COLLECTION PRACTICES ACT PURSUANT TO 15 U.S.C. §1692; ACTIONABLE PURSUANT TO 15 U.S.C. §1692K;

87. The Plaintiff adopts the factual allegations set forth above in ¶¶1-50 along with

Counts One through Two, as though fully incorporated herein by reference.

88.     The Defendants designated in Count Three have each acted in the capacity of debt collectors for the fraud in factum "mortgage loan" in dispute as defined by the Federal FDCPA, none of the Defendants have evidence of being a creditor for the "mortgage loan", and each Defendant has:  (i) made false representations of the character, amount, and legal status of the debt in dispute, and the services rendered or compensation which may be lawfully received by the defendants as debt collectors for the collection of the debt in dispute; (ii) made the representation or implication that nonpayment of the debt in dispute will result in the sale of the subject property; AND (iii) used false representations and deceptive means to collect or attempt to collect the debt in dispute by willfully misrepresenting WFBNA as the "owners and holders" of the debt in dispute knowing otherwise to be true.

89.     The Plaintiff avers that the unlawful debt collection practices by the Defendants constitutes false and misleading representations in violation of the Federal FDCPA and has caused injury to the Plaintiffs as contemplated by 15 U.S.C. §1692 et seq., in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a fraud *in factum* debt, and other costs to defend the Plaintiffs' property and reputation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in her favor and against Defendant, as follows:

a.     Awarding Plaintiff actual damages against Defendants;
b.     Awarding Plaintiff damages for emotional distress against Defendants;
c.     Awarding Plaintiff attorneys' fees and costs against Defendants;
d.     Awarding Plaintiff punitive damages against Defendants;
e.     Imposing any other appropriate monetary sanctions against Defendants; and
f.     Any other relief that this Court deems just and proper.

### COUNT FOUR – AGAINST WFBNA AND WFHM

## VIOLATION OF THE FAIR CREDIT REPORTING ACT (THE "FCRA"), 15 U.S.C. § 1681, et seq.

90.     The Plaintiff adopts the factual allegations set forth above in ¶¶1-50 along with Counts One through Three, as though fully incorporated herein by reference.

91.     Defendants have violated the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, et seq..

92.     At all times pertinent hereto, Defendants were a "person" as that term is defined by 15 U.S.C. § 1681a(b).

93.     During the course of the issues in this matter, Defendants reported false and derogatory information to a number of credit reporting agencies regarding Plaintiff' account.

94.     Thus, Defendants violated sections 1681n and 1681o of the FCRA by engaging in the following conduct:

a.     willfully and negligently reporting false derogatory information to various credit reporting agencies regarding Plaintiff' account;

b.     willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

c.     willfully and negligently failing to review all relevant information concerning Plaintiff' account provided to Defendants;

d.     willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

e.     willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

f.     willfully and negligently failing to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

g.     willfully and negligently failing to provide any and all credit reporting agencies with the factual information and evidence that Plaintiff submitted to Defendants, and which proved that the information concerning Plaintiff' credit reports was inaccurate;

h.     willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to the credit reporting agencies and other entities; and

i.     willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1581s-2(b).

35

95. Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages, and harm to Mr. Sparkman in this matter.

96. Accordingly, Defendants have violated the FCRA and Plaintiff Mr. Sparkman is entitled to relief herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

    a. Awarding Plaintiff actual damages against Defendants;
    b. Awarding Plaintiff damages for emotional distress against Defendants;
    c. Awarding Plaintiff attorneys' fees and costs against Defendants;
    d. Awarding Plaintiff punitive damages and treble damages against Defendants;
    e. Imposing any other appropriate monetary sanctions against Defendants; and
    f. Any other relief that this Court deems just and proper.

## COUNT FIVE – AGAINST WFBNA AND WFHM
## CONTINUAL ACTS OF FRAUD

97. The Plaintiffs adopt the factual allegations set forth above in ¶¶1-50 along with Counts One through Four, as though fully incorporated herein by reference.

98. On April 13, 2011, WFBNA entered into a consent order in In the Matter of: Wells Fargo Bank, N.A. (AA-EC-11-19), followed by the April 4, 2012 consent judgment in United States of America, et.al. v. Bank of America N.A., et.al, (Docket No. 1:12-cv-00361 RMC), both prohibiting WFBNA and WFHM as servicers (not the owner) for a portfolio of residential mortgage loans from further engagement in unfair, deceptive, and illegal servicing and foreclosure practices.

99. The Plaintiff was made party to the aforementioned April 4, 2012 consent judgment upon the NJ AG commencing the civil matter on March 14, 2012 in United States of America,

et.al. v. Bank of America N.A., et.al, (Docket No. 1:12-cv-00361 RMC) pursuant to consumer enforcement authority conferred upon the NJ AG, *parens patriae*, and common law, seeking injunctive and monetary relief for the Plaintiffs and similarly situated persons.

100.    As set forth above and re-stated herein as though fully incorporated by reference, Defendants WFBNA and WFHM disregarded the aforementioned April 13, 2011 consent order and April 4, 2012 consent judgment and the Defendants continued to engage in unfair, deceptive, and illegal "servicing" and "foreclosure" related practices to the detriment of Mr. Sparkman.

101.    The Plaintiff asserts the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and with disregard for the April 13, 2011 consent order entered in In the Matter of: Wells Fargo Bank, N.A. (AA-EC-11-19) and the April 4, 2012 consent judgment in United States of America, et.al. v. Bank of America N.A., et.al, (Docket No. 1:12-cv-00361 RMC).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and against the Defendants, as follows:

    a.    Awarding Plaintiff actual damages against Defendants;

    b.    Awarding Plaintiff damages for emotional distress against Defendants;

    c.    Awarding Plaintiff attorneys' fees and costs against Defendants;

    d.    Awarding Plaintiff punitive damages against Defendants in the amount of $1,000,000.00 per violation and $5,000,000.00 each occurrence pursuant to the April 4, 2012 consent judgment in United States of America, et.al. v. Bank of America N.A., et.al, (Docket No. 1:12-cv-00361 RMC);

    e.    Imposing any other appropriate monetary sanctions against Defendants; and

    f.    Any other relief that this Court deems just and proper.

### COUNT SIX – AGAINST ALL DEFENDANTS
### UNJUST ENRICHMENT

102.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-50 along with

37

Counts One through Five, as though fully incorporated herein by reference.

103.    In establishing a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 NJ. 539, 554 (1994).

104.    As a result of its misrepresentations underlying the fraud in factum "mortgage loan" in dispute, the Defendants have been unjustly enriched at the expense of the Plaintiff.

105.    It is clear that Defendant, either through intentional actions or gross negligence, are attempting to gain possession of Plaintiff's house through an unlawful Sheriff sale.

106.    Accordingly, Defendants are attempting to receive a benefit, unjustly, through the sale of Plaintiffs' home.

107.    The Plaintiff asserts the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor and against Defendant, as follows:

a.    Awarding Plaintiff actual damages against Defendants;
b.    Awarding Plaintiff damages for emotional distress against Defendants;
c.    Awarding Plaintiff attorneys' fees and costs against Defendants;
d.    Awarding Plaintiff punitive damages against Defendants;
e.    Imposing any other appropriate monetary sanctions against Defendants; and
f.    Any other relief that this Court deems just and proper.

## COUNT SEVEN - AGAINST ALL DEFENDANTS
### NEGLIGENT MISREPRESENTATION

108.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-50, along with Counts One through Six as though fully incorporated herein by reference.

38

109. The Defendants to Count Seven have each made negligent and false representations as to the character, legality, ownership, and possession of the "mortgage transaction" in dispute; without any reasonable ground for believing their representations to be true, with the intent to induce the Plaintiff into believing the defendant's representations, causing the Plaintiff to act upon as the defendant's desires, and causing injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud *in factum* "mortgage transaction", and other costs to defend the Plaintiffs' property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in her favor and against Defendants, as follows:

a. Awarding Plaintiff actual damages against Defendants;
b. Awarding Plaintiff damages for emotional distress against Defendants;
c. Awarding Plaintiff attorneys' fees and costs against Defendants;
d. Awarding Plaintiff punitive damages against Defendants;
e. Imposing any other appropriate monetary sanctions against Defendants; and
f. Any other relief that this Court deems just and proper.

## COUNT EIGHT - AGAINST ALL DEFENDANTS
### FRAUDULENT CONCEALMENT

110. The Plaintiff adopt the factual allegations set forth above in ¶¶1-50, along with Counts One through Seven as though fully incorporate herein by reference.

111. The Defendants to Count Eight have each fraudulently concealed from the Plaintiffs: (i) material facts underlying the character, legality, ownership, and possession of the "mortgage transaction" in dispute, (ii) with knowledge of the material facts, knowing material facts were not within reasonably diligent attention, observation, and judgment of the Plaintiff, (iii) while the defendants suppressed and or concealed the material facts with the intention that the Plaintiff be misled as to the character, legality, ownership, and possession of the "mortgage transaction" in

39

dispute, (iv) the plaintiff were reasonably so misled; and (v) causing injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff; property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in her favor and against Defendants, as follows:

a. Awarding Plaintiff actual damages against Defendants;
b. Awarding Plaintiff damages for emotional distress against Defendants;
c. Awarding Plaintiff attorneys' fees and costs against Defendants;
d. Awarding Plaintiff punitive damages against Defendants;
e. Imposing any other appropriate monetary sanctions against Defendants; and
f. Any other relief that this Court deems just and proper.

## COUNT NINE – AGAINST ALL DEFENDANTS
### CONSTRUCTIVE FRAUD

112. The Plaintiff adopt the factual allegations set forth above in ¶¶1-50, along with Counts One through Eight as though fully incorporate herein by reference.

113. The Defendants to Count Nine have each: (i) made false representations, (ii) as to the character, legality, ownership, and possession of the "mortgage transaction" in dispute, (iii) for the purpose of inducing the Plaintiff to reply on such representations, (iv) for which the Plaintiff justifiably relied, and (v) caused injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a. Awarding Plaintiff actual damages against Defendants;

40

    b.     Awarding Plaintiff damages for emotional distress against Defendants;

    c.     Awarding Plaintiff attorneys' fees and costs against Defendants;

    d.     Awarding Plaintiffs punitive damages against Defendants;

    e.     Imposing any other appropriate monetary sanctions against Defendants; and

    f.     Any other relief that this Court deems just and proper.

## COUNT TEN – AGAINST ALL DEFENDANTS
### CIVIL AIDING AND ABETTING FRAUD

114.    The Plaintiff adopts the factual allegations set forth above in ¶¶1-50, along with Counts One through Nine as though fully incorporate herein by reference.

115.    The Defendants to Count Ten have aided and abetted the unfair, deceptive, and unlawful practices engaged in by each Defendant as a collective effort to unlawfully procure monies from the Plaintiff under the duress of an unlawful foreclosure debt collection action by employing false evidence to conceal from the Plaintiff, State Court, and this Court as it pertains to the true character, legality, ownership, and possession of the "mortgage transaction" in dispute.

116.    The Plaintiff asserts the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and has caused injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

    a.     Awarding Plaintiff actual damages against Defendants;

    b.     Awarding Plaintiff damages for emotional distress against Defendants;

    c.     Awarding Plaintiff attorneys' fees and costs against Defendants;

    d.     Awarding Plaintiff punitive damages against Defendants;

    e.     Imposing any other appropriate monetary sanctions against Defendants; and

f.       Any other relief that this Court deems just and proper.

## COUNT ELEVEN – AGAINST ALL DEFENDANTS
### WILLFUL AND WONTON GROSS NEGLIGENCE

117.   The Plaintiff adopt the factual allegations set forth above in ¶¶1-50, along with Counts One through Ten as though fully incorporate herein by reference.

118.   The Defendants to Count Eleven have engaged in willful and wonton unfair, deceptive, and unlawful practices as a collective effort to unlawfully procure monies from the Plaintiff under the duress of an unlawful foreclosure debt collection action by employing false evidence to conceal from the Plaintiff, State Court, and this Court as it pertains to the true character, legality, ownership, and possession of the "mortgage transaction" in dispute.

119.   The Plaintiff asserts the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, and has caused injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

a.   Awarding Plaintiff actual damages against Defendants;
b.   Awarding Plaintiff damages for emotional distress against Defendants;
c.   Awarding Plaintiff attorneys' fees and costs against Defendants;
d.   Awarding Plaintiff punitive damages against Defendants;
e.   Imposing any other appropriate monetary sanctions against Defendants; and
f.   Any other relief that this Court deems just and proper.

## COUNT TWELVE – AGAINST ALL DEFENDANTS
### CIVIL CONSPIRACY TO DEFRAUD

42

120. The Plaintiff adopt the factual allegations set forth above in ¶¶1-50, along with Counts One through Eleven as though fully incorporate herein by reference.

121. The Defendants to Count Twelve have conspired together attempting to unlawfully procure monies from the Plaintiff under the duress of an unlawful foreclosure debt collection action by employing false evidence to conceal from the Plaintiff and the State Court of New Jersey during official proceedings by: (i) misrepresenting the true character, legality, ownership, and possession of the "mortgage transaction" in dispute; (ii) presenting false certifications and communications as to the amount due; AND (iii) uttering forged, falsely acknowledged, and or void ab initio instruments to give the impression of transfers of the "mortgage loan" loan in dispute.

122. The Plaintiff asserts the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and has caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiffs towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiffs' property and reputation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

a. Awarding Plaintiff actual damages against Defendants;
b. Awarding Plaintiff damages for emotional distress against Defendants;
c. Awarding Plaintiff attorneys' fees and costs against Defendants;
d. Awarding Plaintiff punitive damages against Defendants;
e. Imposing any other appropriate monetary sanctions against Defendants; and
f. Any other relief that this Court deems just and proper.

### COUNT THIRTEEN – AGAINST ALL DEFENDANTS
### UNLAWFUL CONVERSION

43

123.   The Plaintiffs adopt the factual allegations set forth above in ¶¶1-50, along with Counts One through Twelve as though fully incorporate herein by reference.

124.   The Defendants to Count Thirteen used false pretenses to fraudulently induce Mr. Sparkman into executing the fraud *in factum* "transaction" in dispute dated November 30, 2007 by: (i) misrepresenting that WM-FSB was the lender suffering a loss of $275,000.00 on November 30, 2007 while, simultaneously, omitting the actual money source from the Plaintiff and the critical documents signed by the Plaintiff.; (ii) misrepresenting the undertaking as a traditional residential "mortgage loan", while concealing and omitting from the Plaintiff that the transaction was actually a securities transaction; (iii) illegally creating an electronic note by forging Mr. Sparkman's electronic signature without Mr. Sparkman's knowledge and consent; AND (iv) creating Mortgage Backed Securities by pledging the aforementioned forged and stolen electronic note, without documenting the transfer and sale.

125.   The Plaintiff assert the aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff, and has caused injury to the Plaintiffs in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a *fraud in factum* "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendants, as follows:

a.   Awarding Plaintiff actual damages against Defendants;
b.   Awarding Plaintiff damages for emotional distress against Defendants;
c.   Awarding Plaintiff attorneys' fees and costs against Defendants;

    d.     Awarding Plaintiff punitive damages against Defendants;

    e.     Imposing any other appropriate monetary sanctions against Defendants; and

    f.     Any other relief that this Court deems just and proper.

## COUNT FOURTEEN – AGAINST ALL DEFENDANTS
### LOSS OF CONSORTIUM

126. The Plaintiff adopts the factual allegations set forth above in ¶¶1-50, along with Counts One through Thirteen as though fully incorporate herein by reference.

127. The unfair, deceptive, and illegal practices by the Defendants in their attempted theft of the subject property and extortion of monies from the Plaintiff towards an unlawful debt has caused irreparable damage to Mr. Sparkman's relationship with his child as the result of his experience.

128. The Plaintiff asserts the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

    a.     Awarding Plaintiff actual damages against Defendants;

    b.     Awarding Plaintiff damages for emotional distress against Defendants;

    c.     Awarding Plaintiff attorneys' fees and costs against Defendants;

    d.     Awarding Plaintiff punitive damages against Defendants;

    e.     Imposing any other appropriate monetary sanctions against Defendants; and

    f.     Any other relief that this Court deems just and proper.

## COUNT FIFTEEN – AGAINST WFBNA AND WFHM
### DEFAMATION

129. The Plaintiff adopts the factual allegations set forth above in ¶¶1-50, along with Counts One through Fourteen as though fully incorporate herein by reference.

130. At all times relevant herein, Defendants have published statements both orally and through writing to various credit reporting agencies, collection agencies, and/or attorneys that are false and negative representations concerning Mr. Sparkman's credit information and history.

131. At a minimum, Defendants have published these statements each time Mr. Sparkman has reached out to Defendants and each time other credit reporting agencies reached out to Defendant and each time a credit reporting agency has reinvestigated any dispute raised by Mr. Sparkman including but not limited to, the disputes identified herein.

132. The statements made by Defendants are false, as Plaintiff never actually defaulted on any debt stemming from the fraud in factum "mortgage loan" in dispute.

133. Defendants have published these statements to a number of credit reporting agencies, including the three major credit bureaus.

134. Defendants knew, or should have known, that the statements that it made were false when made and that it had no factual basis for making the statements that it did, as Mr. Sparkman had notified Defendants that the statements were false for the aforementioned reasons and, nevertheless, Defendants continue to publish such statements up to and through the present time.

135. The written statements and publications are libel per se.

136. The oral statements and publications are slander per se.

137. In addition, and despite the repeated notices from Plaintiff, Defendants have acted with malice by failing to communicate the information provided to it by Plaintiffs to credit reporting agencies when responding to the reinvestigation attempts of such credit reporting agencies.

138. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiff that are

outlined more fully above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, compensatory, and punitive damages, as well as other such relief, as permitted by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

a.  Awarding Plaintiff actual damages against Defendants;
b.  Awarding Plaintiff damages for emotional distress against Defendants;
c.  Awarding Plaintiff attorneys' fees and costs against Defendants;
d.  Imposing any other appropriate monetary sanctions against Defendants; and
e.  Any other relief that this Court deems just and proper.

**COUNT SIXTEEN – AGAINST WFBNA AND WFHM**
**VIOLATION OF RESPA – LOAN MODIFICATION**

139.  The Plaintiff adopts the factual allegations set forth above in ¶¶1-50, along with Counts One through Fifteen as though fully incorporate herein by reference.

140.  Defendants are in direct violation of the Real Estate Settlement Procedures Act ("RESPA") and RESPA's Regulation X specifically, 12 CFR 1024.41(g) which states:

> *If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option.*

Additionally, the official interpretation states that:

> *Loss mitigation applications submitted 37 days or less before foreclosure sale. Although a servicer is not required to comply with the requirements in § 1024.41 with respect to a loss mitigation application submitted 37 days or less before a*

47

*foreclosure sale, a servicer is required separately, in accordance with policies and procedures maintained pursuant to § 1024.38(b)(2)(v) to properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options available to the borrower pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan. Such evaluation may be subject to requirements applicable to a review of a loss mitigation application submitted by a borrower 37 days or less before a foreclosure sale.*

141. Despite the requirements of RESPA and Regulation X, Defendants have failed to properly review Plaintiffs' loan modification submissions in a timely manner and in good faith, and instead, proceed with a judicial foreclosure sale of Plaintiffs' home on January 15, 2019.

142. Further, Defendant has failed to provide a valid response to Plaintiffs' loan modification submissions in accordance with RESPA and Regulation X.

143. Specifically, Plaintiff submitted a loan modification application to Defendant as stated above over thirty seven days before the sale was scheduled.

144. Finally, Defendant has made no final decision on Plaintiffs' loan modification application and/or debt restructuring request, rather simply requesting supplemental documents.

145. Rule 1024.41 specifically makes it clear that requesting supplemental documents does not mean a complete package was not submitted, it simply means clarification is desired as stated in Paragraph 41(b)(2)(i)(B):

*"1. Later discovery of additional information required to evaluate application. Even if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1). See § 1024.41(c)(2)(iv) addressing facially complete applications."*

146.    As such, there is no question that the loan modification package submitted in this case was prior to the thirty seven day deadline, and the Defendants willfully proceeded with sale of the Plaintiffs' residence without approving or denying the modification package to present date.

147.    Accordingly, Defendant is in violation of RESPA and Regulation X.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

a.    Awarding Plaintiffs actual damages against Defendants;
b.    Awarding Plaintiffs damages for emotional distress against Defendants;
c.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
d.    Awarding Plaintiffs punitive damages against Defendants;
e.    Imposing any other appropriate monetary sanctions against Defendants; and
f.    Any other relief that this Court deems just and proper.

## COUNT SEVENTEEN – AGAINST WFBNA
### QUIET TITLE

148.    The Plaintiff adopt the factual allegations set forth above in ¶¶1-50, along with Counts One through Sixteen as though fully incorporate herein by reference.

149.    N.J.S.A. 2A:62-1 permits a person "*in the peaceable possession of lands*" to bring an action to "*clear up all doubts and disputes*" concerning some other person's claim to "*a lien or encumbrance thereon.*"

150.    There is a dispute as to whether any of the Defendants are legally entitled and parties in possession of the original paper note and mortgage in dispute, the legality of the transaction from which the instruments derive, and whether any of the Defendants have any right or interest in the property based upon their purported rights and possession of fraud *in factum* instruments.

49

151. Plaintiff seeks clarification of the validity or reach of their title in circumstances that otherwise preclude a forum for the resolution of such a dispute, pursuant to N.J.S.A. 1A:62-1.

152. At all times relevant hereto, Defendant and other entities related to Defendant have claimed an interest and/or estate in the Property adverse to Plaintiff.

153. Plaintiff, therefore, allege that, upon information and belief, none of the Defendants herein hold a perfected and/or secured interest and/or claim in the Property and, as such, Defendant is estopped and precluded from asserting any claim against Plaintiffs' estate.

154. There is currently no other forum for an adjudication of the dispute herein and there are no other adequate remedies at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendant, as follows:

- a. Awarding Plaintiff actual damages against Defendant;
- b. Awarding Plaintiff damages for emotional distress against Defendant;
- c. Awarding Plaintiff attorneys' fees and costs against Defendant;
- d. Awarding Plaintiff punitive damages against Defendant;
- e. Voiding of the Security Instrument.;
- f. Voiding of the Sheriff Deed.;;
- g. Imposing any other appropriate monetary sanctions against Defendant; and
- h. Any other relief that this Court deems just and proper.

### COUNT NINETEEN
### DECLARATORY RELIEF PURSUANT TO N.J.S.A. 12A:3-305

155. The Plaintiff adopt the factual allegations set forth above in ¶¶1-50, along with Counts One through Nineteen as though fully incorporate herein by reference.

156. The Plaintiff re-avers that the mortgage loan in dispute is the product of fraud *in factum*, absence negligence on part of Mr. Sparkman, and fraud in factum is a good defense even

against a holder in due course, a status of which none of the Defendants can claim and prove. See *Amsterdam v. De Paul*, 70 N.J. Super. 196 (1961) 175 A.2d 219: "…A negotiable instrument which is the product of fraud in the factum, unaccompanied by negligence, as distinguished from an instrument which is the product of fraud *200 in the treaty, is void, and not merely voidable. As stated in 17 C.J.S. Contracts § 140, p. 495: "Where some trick is used to substitute another instrument for the one which it is intended to sign, as where a note is substituted for a receipt, and in like cases, the signature has no legal effect, * * *. Hence there is no agreement which can give rights to anyone, except where the signer is estopped by negligence or otherwise to set up the truth as against bona fide third persons * * *."'".

157.    As set forth within N.J.S.A. § 12A:3-305. Defenses and claims in recoupment, that states in part, that: "(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,…".

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

a.    Voiding of the security instrument in dispute.
b.    Voiding of the obligation in dispute.
c.    Voiding of the Sheriff Deed.; and
d.    Any other relief that this Court deems just and proper.

## CLAIMS RESERVED

51

The Plaintiff herein reserves all claims against non-parties that are not designated Defendants in this matter, allowing the Plaintiffs an opportunity to discover all relevant facts and any and all claims against the non-parties.

### EQUITABLE TOLLING

The Plaintiffs herein invoke the doctrine of equitable tolling in order to preserve any and all claims recently discovered by the Plaintiff, and/or the conduct complained is continuous.

　　/s/ Joshua Thomas, Esq.　　　　　
Joshua Thomas, Esq.
*Attorney for Plaintiff*

Dated: